UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| FRED NEKOUEE, individually, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | Case No. 4:18-cv-01894 |
| | : | |
| ARNOLD PARK MALL, LLC, | : | |
| a Missouri limited liability company; | : | |
| | : | |
| and | : | |
| | : | |
| HOBBY LOBBY STORES, INC., | : | |
| an Oklahoma corporation; | : | |
| | : | |
| Defendants. | : | |
| _____/ | | |

**COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendants, ARNOLD PARK MALL, LLC, a Missouri limited liability company; and HOBBY LOBBY STORES, INC., an Oklahoma corporation (sometimes referred to as "Defendants"), for declaratory and injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.      Defendant Arnold Park Mall, LLC's property, the Arnold Park Mall, is located at and near 11 Arnold Mall, Arnold, Missouri 63010, in Jefferson County ("Arnold Park Mall").

3.      Venue is proper in the Eastern District of Missouri because the situs of the property

lies in this judicial district.   The Defendants' properties and places of public accommodation are located in and do business within this judicial district.

4.    Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given original jurisdiction over actions which arise from the Defendants' violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.    Defendant Arnold Park Mall, LLC owns, leases, leases to, or operates a place of public accommodation (shopping center) as defined by the ADA, 42 U.S.C. § 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.   Defendant Arnold Park Mall, LLC is responsible for complying with the obligations of the ADA.

6.    The place of public accommodation that the Defendant Arnold Park Mall, LLC owns, operates, leases or leases to is known as the Arnold Park Mall.

7.    Defendant Hobby Lobby Stores, Inc. owns, leases, leases to, or operates a place of public accommodation (retail store) as defined by the ADA, 42 U.S.C. § 12181(7)(E), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104.   Defendant Hobby Lobby Stores, Inc. is responsible for complying with the obligations of the ADA.

8.    The place of public accommodation that the Defendant Hobby Lobby Stores, Inc. owns, operates, leases or leases to is known as "Hobby Lobby" in the Arnold Park Mall, with an address of 30 Arnold Mall, Arnold, Missouri 63010.

9.    Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis and requires the use of a wheelchair for mobility.

10.    Mr. Nekouee travels to the St. Louis area every three to six months to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other

areas, or to help his brother evaluate whether to buy or sell heavy equipment.   He also used to travel to the St. Louis area to attend heavy equipment auctions.

11.      Fred Nekouee has visited, bought goods, and sought to avail himself of the services at the Arnold Park Mall which forms the basis of this lawsuit on March 27, 2018, and on September 25, 2018, and he plans to return to the property to avail himself of the goods and services offered to the public at the property since it is close to the heavy equipment dealerships he visits in the St. Louis area and close to the hotels he stays at in the area.

12.      Fred Nekouee has definite plans to return to the St. Louis area and the Arnold Park Mall in December of 2108.

13.      Mr. Nekouee likes to shop at stores like Hobby Lobby to buy items for himself while traveling or gifts for his family, and since it is a chain he knows generally what it offers for sale.   He would like to return to the Hobby Lobby at the Arnold Park Mall.

14.      Fred Nekouee has bought goods at the Hobby Lobby in the Arnold Park Mall on March 27, 2018 and on September 25, 2018.

15.      Fred Nekouee likes to have his hair cut at inexpensive chains like Great Clips at the Arnold Park Mall.   He would like to return to this Great Clips.

16.      Fred Nekouee had his hair cut at the Great Clips at the Arnold Park Mall on September 25, 2018.

17.      The Hobby Lobby and Great Clips at the Arnold Park Mall are close to the hotels he stays at in the area.

18.      Plaintiff Fred Nekouee has visited the St. Louis area near the Arnold Park Mall in June 2015; June 2016; September 2017; December 2017; March 2018; July 2018; and September 2018.

19.     For the reasons set forth in paragraphs 9-18 and 29, Mr. Nekouee plans to return to the Arnold Park Mall.

20.      The Plaintiff has encountered architectural barriers at the subject property.   The barriers to access that the Plaintiff encountered at the property have endangered his safety in his wheelchair, impaired his ability to access the property due to excessively steep slopes in parking spaces for the disabled, access aisles and walking surfaces, impaired his use of the men's and women's restrooms in Hobby Lobby and the restroom in Great Clips at the Arnold Park Mall, have impaired his access to the goods and services at Hobby Lobby and Great Clips, and deterred him from trying to access other stores at the Arnold Park Mall.

21.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

22.     The Plaintiff cannot move up or down steep inclines in his wheelchair because he lacks the strength and also risks tipping his wheelchair forwards or backwards.

23.     Excessively steep cross slopes cause the Plaintiff to be unstable in his wheelchair and such excessively steep slopes pose a risk of causing the Plaintiff to tip over sideways in his wheelchair.

24.     On his visits to the Arnold Park Mall, the Plaintiff encountered excessively steep running slopes and cross slopes in its parking lot, access aisles, and walking surfaces (including sidewalks).

25.     The Plaintiff also encountered barriers to access to and in the men's and women's restrooms in Hobby Lobby and the restroom in Great Clips.

26.     The Plaintiff is deterred from visiting the Arnold Park Mall even though he enjoys its goods and services at such places of public accommodation as Hobby Lobby and Great Clips,

4

because of the difficulties he will experience at the shopping center until the property is made accessible to him in a wheelchair.

27.     The Plaintiff is deterred from visiting other stores in the Arnold Park Mall, even though the shopping center is close to the hotels he stays in when he visits the area because of the difficulties he will experience at the Arnold Park Mall in the parking lot, access aisles, and walking surfaces, until the property is made accessible to him in a wheelchair.

28.     Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendants' non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 33 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

29.     Fred Nekouee desires to visit the Arnold Park Mall not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

30.     The Defendants have discriminated against the individual Plaintiff Fred Nekouee by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the buildings, as prohibited by 42 U.S.C. § 12182 et seq.

31.     The Plaintiff Fred Nekouee is expressly authorized to bring this action under 42 U.S.C § 12188(a), incorporating by reference the remedies set forth in 42 U.S.C. § 2000a-3.

32.     The Defendants have discriminated, and are continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26,

1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

33.     Preliminary inspections of the Arnold Park Mall, the Hobby Lobby, and Great Clips show violations and existing barriers to access.   The violations that Fred Nekouee personally encountered or observed on his visits to the Arnold Park Mall include, but are not limited to:

### PARKING AREA

a.   In the parking lot, as shown in the photographs below, there are no parking spaces for disabled patrons with van accessible signage in front of Hobby Lobby, in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   The Plaintiff observed this lack of signage, and it deters him from visiting the Arnold Park Mall.









b.   As shown in the photograph below, the parking spaces for disabled patrons in front of Pediatric Dentists of Sunset Hills do not have the signage and international symbol of accessibility, in violation of Federal Law 2010, ADAAG §§ 502.6 and 703.7.2.1.   The Plaintiff observed this lack of signage, and it deters him from visiting the Arnold Park Mall.



c.  In the parking lot, there are no parking spaces for disabled patrons with van accessible signage in front of Pediatric Dentists of Sunset Hills, in violation of Federal Law 2010 ADAAG §§ 208.2.4 and 502.6.   The Plaintiff observed this lack of signage.

d.  In the parking lot, there are no parking spaces for disabled patrons with van accessible signage in front of Lily's Nail & Spa and Great Clips, in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   The Plaintiff observed this condition and it deters him from visiting the Arnold Park Mall.

e.  In the parking lot, the parking space for disabled patrons in front of the entrance to Hobby Lobby is uneven and in the middle of such space the running slope is as steep as 1:31.3 (3.2%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff encountered these conditions, and they made him unstable in his wheelchair.

f.  In the parking lot, the parking space for disabled patrons in front of Lily's Nail & Spa has a running slope as steep as 1:26.3 (3.8%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition, and it deters him from visiting the Arnold Park Mall.

g.  In the parking lot, the parking space for disabled patrons in front of SSM Health and Lily's Nail & Spa has an uneven surface and the middle section of such space has a running slope as steep as 1:22.7 (4.4%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition, and it deters him from visiting the Arnold Park Mall.

h.  In the parking lot, another parking space for disabled patrons in front of Hobby Lobby has an uneven surface and a cross slope as steep as 1:31.3 (3.2%), which cross slope

9

is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. The Plaintiff encountered this condition, and it caused him to be unstable in his wheelchair.

 i. As shown in the photographs below taken on March 27, 2018, the parking space for disabled patrons in front of the entrance to Hobby Lobby has an uneven surface with a puddle of water and a cross slope as steep as 1:21.7 (4.6%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4. The change in elevation in this parking space also is about 1 inch and greater than the maximum allowed change of level of 0.5 of an inch, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3. The Plaintiff encountered this excessively steep cross slope and change of level, and they caused him to be unstable while unloading and loading into his vehicle.





j.   In the parking lot, the parking space for disabled patrons in front of Lily's Nail &
Spa is a steep as 1:18.9 (5.3%), which slope is steeper than the maximum allowed slope of
1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed
this condition, and it deters him from visiting the Arnold Park Mall.

k.   In the parking lot, the change in elevation in the parking space for disabled patrons
in front of Pediatric Dentists of Sunset Hills is about 0.75 of an inch and greater than the
maximum of 0.5 of an inch, in violation of Federal Law 2010, ADAAG §§ 502.4 and 303.3.
The Plaintiff observed this condition and puddling of water in this space, and such
conditions deter him from visiting the Arnold Park Mall.

l.   In the parking lot, the cross slope of the access aisle serving the disabled parking
spaces in front of Hobby Lobby is as steep as 1:27.8 (3.6%), which slope is steeper than
the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG §

502.4.   The Plaintiff encountered this condition, and it made him unstable in his wheelchair while moving from and to his vehicle.

m.   In the parking lot, the cross slope of the access aisle serving the disabled parking spaces in front of Lily's Nail & Spa is as steep as 1:25.6 (3.9%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 502.4.   The Plaintiff observed this condition.

n.   The running slope of the walking surface from the accessible parking spaces to Lily's Nail & Spa and Great Clips is as steep as 1:16.9 (5.9%), which slope is steeper than the maximum allowed slope of 1:20 (5%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff used this walking surface, and such slope made him unstable in his wheelchair.

o.   The walking surface from the accessible parking spaces in front of Hobby Lobby to its main entrance door has an uneven surface and a cross slope as steep as 1:20.8 (4.8%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff encountered these conditions, and they made him unstable in his wheelchair while moving to and from the entrance to Hobby Lobby.

p.   The cross slope of the walking surface on the sidewalk in front of Pediatric Dentists of Sunset Hills is as steep as 1:25 (4%), which slope is steeper than the maximum allowed slope of 1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff observed this condition, and it deters him from visiting the Arnold Park Mall.

q.   The cross slope of the walking surface towards Lily's Nail & Spa and Great Clips is as steep as 1:31.3 (3.2%), which slope is steeper than the maximum allowed slope of

1:48 (2%), in violation of Federal Law 2010, ADAAG § 403.3.   The Plaintiff encountered this condition, and it made him unstable in his wheelchair.

r.    The running slope of the accessibility ramp in front of Quest Diagnostics is as steep as 1:9 (11.1%), which slope is steeper than the maximum allowed slope of 1:12 (8%), in violation of Federal Law 2010, ADAAG § 405.2.   The Plaintiff observed this condition, and it deters him from visiting the Arnold Park Mall.

s.    The slope of the accessibility curb ramp side or flare in front of Quest Diagostics and Great Clips is as steep as 1:6 (16.7%), which slope is dangerously steeper than the maximum allowed slope of 1:10 (10%), in violation of Federal Law 2010, ADAAG § 406.3.   The Plaintiff encountered this curb ramp side and he had to maneuver his wheelchair to avoid it when moving up and down the ramp.

t.    The transition from the accessible route to the sidewalk in front of Hobby Lobby towards the entrance door to Hobby Lobby has a change of level of about 1 inch and greater than the maximum allowed change of level of 0.5 of an inch, in violation of Federal Law 2010, ADAAG §§ 303.3 and 405.5.   The Plaintiff encountered this condition, and he required assistance to move over this change of level in his wheelchair.

**HOBBY LOBBY ENTRANCE DOOR**

u.    The force needed to open the entrance door to Hobby Lobby is about 11 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   Fred Nekouee, in his wheelchair, required assistance to open this entrance door and to enter Hobby Lobby.

**HOBBY LOBBY--MEN'S RESTROOM**

13

v.   In the men's restroom in Hobby Lobby, the door pull side maneuvering clearance space in a latch approach perpendicular to the doorway is 35 inches and is blocked by a trash can, and such maneuvering clearance is less than the minimum width of 48 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   Hobby Lobby must take care where it locates trash cans in the restrooms.   The Plaintiff encountered this trash can and lack of maneuvering clearance space, and it made it very difficult for him to try to open the door in his wheelchair.

w.   The rear wall grab bar in the men's restroom in Hobby Lobby only extends 7 inches and 29 inches on either side from the centerline of the water closet and not a minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side, in violation of Federal Law 2010, ADAAG § 604.5.2.   The Plaintiff used this rear wall grab bar, and due to its lack of length on one side, it made it very difficult for him to position himself to sit on the toilet.

x.   In the men's restroom in Hobby Lobby, the leading edge of the paper towel dispenser protrudes 10 inches from the wall into the circulation path, which is more than the maximum allowed protrusion into the circulation path of 4 inches (100 mm), in violation of Federal Law 2010, ADAAG § 307.2.   The Plaintiff encountered this condition and was at risk of a head injury, and he had difficulty maneuvering his wheelchair around it.

y.   In the men's restroom in Hobby Lobby, the toilet paper dispenser centerline is about zero inches from the front of the water closet and not between a minimum of 7 inches and a maximum of 9 inches from the centerline, in violation of Federal Law 2010, ADAAG § 604.7.   The Plaintiff could not reach the toilet paper from a sitting position on the toilet.

14

z.    In the men's restroom in Hobby Lobby, the bottom edge of the mirror's reflecting surface is 44 inches above the finish floor and higher than the maximum allowed height of 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   In his wheelchair, the Plaintiff could not see his full face in this mirror.

aa.   In the men's restroom in Hobby Lobby, the accessible toilet compartment door pull is not provided on both sides of the door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   The Plaintiff could not fully close the door to this compartment.

bb.  In the men's restroom in Hobby Lobby, the coat hook is installed at about 61 inches above the finish floor and higher than the maximum allowed height of 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.

**HOBBY LOBBY--WOMEN'S RESTROOM**

cc.   The Plaintiff encountered barriers to access in the men's restroom in Hobby Lobby, so on his next trip to the restroom, he tried using the women's restroom.   The force needed to open the entrance door to the women's restroom in Hobby Lobby is 10 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   Fred Nekouee, in his wheelchair, required assistance to open this door.

dd.    In the women's restroom in Hobby Lobby, the door pull side maneuvering clearance space in a latch approach perpendicular to the doorway is 39 inches and is blocked by a trash can, and such maneuvering clearance is less than the minimum width of 48 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   Again, Hobby Lobby

must take care where it locates trash cans in the restrooms.   The Plaintiff encountered this trash can and lack of maneuvering clearance space, and it made it very difficult for him to try to open the door in his wheelchair.

ee.   In the women's restroom in Hobby Lobby, the accessible toilet compartment door pull is not provide on both sides of the door near the latch, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   The Plaintiff could not fully close this door.

ff.   In the women's restroom in Hobby Lobby, the rear wall grab bar only extends 7 inches and 29 inches from the centerline of the water closet and does not extend the required minimum of 12 inches (305 mm) on one side and 24 inches (610 mm) on the other side of such centerline, in violation of Federal Law 2010 ADAAG § 604.5.2.   The Plaintiff had difficulty supporting himself on this grab bar from his wheelchair to use the toilet.

gg.   In the women's restroom in Hobby Lobby, the toilet paper dispenser centerline is about 12 inches from the front of the water closet and not between a minimum of 7 inches and a maximum of 9 inches from the front of the water closet, in violation of Federal Law 2010, ADAAG § 604.7.   The Plaintiff could not reach the toilet paper from a sitting position on the toilet.

hh.   In the women's restroom in Hobby Lobby, the bottom edge of the mirror's reflecting surface is 46 inches above the finish floor and higher than the maximum allowed height of 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   The Plaintiff could not see his full face in this mirror while sitting in his wheelchair.

ii.   In the women's restroom in Hobby Lobby, the coat hook is installed at about 66 inches above the finish floor and higher than the maximum allowed height of 48 inches

above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   In his wheelchair, the Plaintiff could not reach this coat hook.

**GREAT CLIPS—DOORWAY AND INTERIOR**

jj.   The force needed to open the door to the restroom in Great Clips is about 13 pounds, which force exceeds the maximum allowed force of 5 pounds (22.2 N) pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAG § 404.2.9.   Fred Nekouee, in his wheelchair, required assistance to open this door to the restroom in Great Clips.

kk.   As shown in the photograph below, the door to the restroom in Great Clips does not have signage with the international symbol of accessibility, in violation of Federal Law 2010, ADAAG § 703.7.2.1.   The Plaintiff observed this condition.



ll. In Great Clips, the restroom door push side maneuvering clearance in a front approach beyond the latch and parallel to the doorway on a door with a latch and closer is zero inches and less than the minimum required clearance of 12 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   In his wheelchair, the Plaintiff had great difficulty trying to use this door.

mm.        In the restroom in Great Clips, the accessible stall width is about 55 inches and less than the minimum required width of 60 inches, in violation of Federal Law 2010, ADAAG §§ 604.8.1 and 304.3.   It was very difficult for the Plaintiff to maneuver his

wheelchair in this stall.

nn.    In the restroom in Great Clips, the seat height of the water closet is about 15 inches above the finish floor and less than the minimum required height of 17 inches above the finish floor measured to the top of the seat, in violation of Federal Law 2010, ADAAG § 604.4.   The Plaintiff had great difficulty using this water closet.

oo.    In Great Clips, the restroom does not have a rear wall grab bar, in violation of Federal Law 2010, ADAAG § 604.5.   The Plaintiff had great difficulty using the toilet in this restroom due to the lack of a rear wall grab bar.

pp.    In the restroom in Great Clips, the side wall grab bar is only about 38 inches in long and less than the required minimum length of 42 inches (1065 mm), in violation of Federal Law 2010, ADAAG § 604.5.1.   The Plaintiff had great difficulty using the toilet in this restroom due to this short side wall grab bar.

qq.    In the restroom in Great Clips, the end of the side wall grab bar is located at about 16 inches from the rear wall and further from the rear wall than the maximum allowed distance of 12 inches (305 mm), in violation of Federal Law 2010, ADAAG § 604.5.1. The Plaintiff had great difficulty using the toilet in this restroom due to the location of this side wall grab bar.

rr.    As shown in the photograph below, in the restroom in Great Clips, the lavatory pipes under the lavatory are not insulated, in violation of Federal Law 2010, ADAAG §§ 606.3 and 606.5.    The Plaintiff encountered this condition and was at risk of burning the skin on his legs and injury due to the lack of insulation on the lavatory pipes.



ss. In the restroom in Great Clips, the controls for the lavatory faucet require tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 606.4 and 309.4.   The Plaintiff could not turn on the water with a loose grip or closed fist.

tt.    In the restroom in Great Clips, the bottom edge of the mirror's reflecting surface is about 51 inches above the finish floor and higher than the maximum allowed height of 40 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   Due to its height, the Plaintiff could not use this mirror from his wheelchair.

uu.   In the restroom in Great Clips, the water closet does not have the flush control on the open and wide side of the clear floor space, in violation of Federal Law 2010, ADAAG § 604.6.   The Plaintiff had great difficulty flushing the toilet due to the position of the flush control.

vv.   In the restroom in Great Clips, the light switch is about 53.5 inches above the

finish floor and higher than the maximum allowed height above the finish floor of 48 inches, in violation of Federal Law 2010, ADAAG § 308.2.1.   The Plaintiff observed this condition.

ww.     In the restroom in Great Clips, the door hardware requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§ 309.4 and 404.2.7.   The Plaintiff could not open this door with a closed fist or loose grip.

xx.   In the restroom in Great Clips, the accessible toilet compartment door swings into the compartment, in violation of Federal Law 2010, ADAAG § 604.8.1.2.   It was very difficult for the Plaintiff to maneuver his wheelchair to be able to get to the side of and behind this door, and he required assistance to enter and exit this compartment.

yy.   In the restroom in Great Clips, the door pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway is 11 inches (blocked by a trash can) and less than the required minimum clearance of 18 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   The Plaintiff encountered this trash can within the door pull side maneuvering space, and he had great difficulty trying to move to the door.

34.     All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

35.     The discriminatory violations described in paragraph 33 are not an exclusive list of the Defendants' ADA violations.   Plaintiff requires the inspection of the Defendants' places of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access.   In order to remedy this discriminatory situation, the Plaintiff requires an inspection of the Defendants' places of public accommodation to determine

21

all of the areas of non-compliance with the Americans with Disabilities Act.

36.     The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendants' buildings and its facilities, and have otherwise been discriminated against and damaged by the Defendants because of the Defendants' ADA violations, as set forth above.  The individual Plaintiff, and all others similarly situated will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

37.     Defendants have discriminated against the individual by denying individuals access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.

38.     Furthermore, the Defendants continue to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

39.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendants, a remedy in equity is warranted.

40.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendants pursuant to 42 U.S.C. § 12205 and 28 CFR

36.505.

41.     Defendants are required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendants' places of public accommodation since January 26, 1992, then the Defendants are required to ensure to the maximum extent feasible, that the altered portions of the facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendants' facilities were designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendants' facilities must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

42.     Notice to Defendants is not required as a result of the Defendants' failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendants.

43.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff Injunctive Relief, including an order to require the Defendants to alter the Arnold Park Mall and adjacent parking lot spaces, Hobby Lobby, and Great Clips, to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendants cure their violations of the ADA.

44.     Millions of Americans require the use of a wheelchair for mobility.

45.     The number of wheelchair users increases in the United States every year due in part

to the aging of the baby boomer generation.

46.   Removing existing architectural barriers to access pursuant to Title III of the ADA will be good for business at the Arnold Park Mall.

**WHEREFORE,** Plaintiff respectfully requests:

a.      The Court issue a Declaratory Judgment that determines that at the commencement of the subject lawsuit the Defendants are in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.      Injunctive relief against the Defendants including an order to make all readily achievable alterations to the facilities; or to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendants to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

Respectfully submitted,


s/Robert J. Vincze_____
Robert J. Vincze (MO #37687)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*

25